**Manuel OTERO, Plaintiff,**

v.

**Michael JENNINGS (Shield # 28965) individually and as a Police Officer of the New York City Police Department, the City of New York, and Mildred Ramirez, Defendants.**

**No. 86 Civ. 2400 (RWS).**

United States District Court,
S.D. New York.

Sept. 12, 1988.

tort claim because diversity jurisdiction does not exist. *See Baylis, supra,* 843 F.2d at 664–65.

Boyd, Staton & Cave, Brooklyn, N.Y., for plaintiff; Gail W. Boyd, of counsel.

Peter L. Zimroth, Corp. Counsel, New York City; Gabriel Taussig, Alfred G. Fredericks, Julian Bazel, Michele A. Pincus, of counsel.

## OPINION

SWEET, District Judge.

Defendants Michael Jennings ("Jennings") and the City of New York (the "City") (collectively the "Defendants") have moved for partial summary judgment pursuant to Rule 56, Fed.R.Civ.P. dismissing plaintiff Manuel Otero's ("Otero") claims against Jennings for false arrest, false imprisonment, and malicious prosecution,[1] and his claim against the City for faulty firing, training, supervision, and discipline of its police officers. For the reasons set forth below, the motion is granted.

### Facts

This case arises out of Otero's March 25, 1985 entry into apartment 7–F at 888 8th Avenue, New York City, an apartment he had formerly occupied with his wife from whom he had become estranged, and his subsequent arrest for having so entered.

On October 17, 1984, Otero and his wife Gloria Otero ("Gloria") entered into a Mutual Order of Protection issued by Judge Kathryn McDonald of the Family Court of

---

**1.** The complaint states that this is a cause of action for assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, intentional infliction of emotional distress, negligence, and violation of Otero's First, Fourth, Fifth, Sixth, and Fourteenth Amendment rights.

the City of New York, County of New York. *Otero v. Otero,* No. 0–5219/84. Pursuant to that order, both spouses were directed to refrain from "acts constituting assault, menacing, reckless endangerment, and/or disorderly conduct directed toward each other." [2] The order stated that it would remain in effect for twelve months, or until October 17, 1985.

On November 14, 1984, Family Court Judge Jack Turret amended the order by adding "Amended to exclude the Respondent from Apt 7–F located at 888 8th Avenue, N.Y.C. 10019 pending further action of this court."

In March 1985, Gloria traveled to Brazil, leaving the apartment in the custody of a friend, Mildred Ramirez ("Ramirez"). Gloria also left Ramirez a copy of the Order of Protection.

On March 25, 1985, Otero went to the apartment he had occupied with his wife. He entered the apartment by having a locksmith come and change the locks. Ramirez discovered Otero when she returned from work and was unable to enter the apartment with her key. She then went to the Midtown North Precinct where Jennings was on duty as crime prevention officer.[3] She informed him of Otero's presence in the apartment and showed him a copy of the order of protection.

Jennings went to the apartment where he found and arrested Otero.[4] He thereafter brought Otero to the station house where the latter was charged with violating the order of protection, with resisting arrest, and with burglary in the second degree. The last of these charges was based on Ramirez' assertion that Otero had taken $401.00 of Gloria's money, which was left in the apartment for Ramirez' use as custodian of the premises.

The following day, Jennings, along with an assistant district attorney, made out a felony complaint against Otero. The complaint stated:

> Deponent [Jennings] is informed by Millie Ramirez the custodian of apartment 7F, that defendant knowingly entered and remained unlawfully in a dwelling with the intent to commit a crime therein in that defendant unlawfully entered apartment 7F, a residential apartment, in violation of a lawful order of protection issued by Judge Kathryn McDonald and effective through October 17, 1985, and defendant changed the locks to said apartment and took approximately $401 from said apartment and refused to leave when requested to do so.

This complaint was dismissed on November 22, 1985 based on speedy trial considerations.

*Prior Proceedings*

Otero commenced this action by filing a complaint on March 21, 1986 against the moving defendants as well as Officer John Tumelty and Mildred Ramirez. On June 5, 1986, a default judgment was entered against Ramirez. On February 25, 1988, Otero dropped claims filed pursuant to 42 U.S.C. §§ 1985, 1986, and state law claims for assault, intentional infliction of emotional distress, abuse of process, and prima facie tort. He also dropped all claims against John Tumelty.

The defendants filed this motion for partial summary judgment on May 4, 1988, and the court heard oral argument and the motion was fully submitted on June 24, 1988.

*Discussion*

On a motion for summary judgment, a court must decide whether there is a genuine issue of fact necessitating trial. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The court is "not to resolve disputed issues

---

**2.** The order also forbade removing their child from the jurisdiction.

**3.** Otero points out that Ramirez went to Midtown North specifically looking for Officer Tumelty, with whom Jennings shared an office. This fact is irrelevant to the substance of this motion.

**4.** In addition to contesting the arrest itself, Otero also claims that Jennings used undue force in effecting the arrest. The defendants have not moved for summary judgment on that issue and have stated their preference for having it determined at trial.

of fact but to assess whether there are any factual issue to be tried, while resolving ambiguities and drawing reasonable inferences against the moving party." *Knight v. U.S. Fire Insurance Co.*, 804 F.2d 9, 11 (2d Cir.1986), *cert. denied*, 480 U.S. 932, 107 S.Ct. 1570, 94 L.Ed.2d 762 (1987).

Probable cause for arresting an individual is a defense to actions for false arrest, false imprisonment, and malicious prosecution. *Zanghi v. Incorporated Village of Old Brookville*, 752 F.2d 42, 45 (1985). Under New York Family Court Act § 168,

> [t]he presentation of a copy of an order of protection ... to any peace officer ... or police officer shall constitute authority for him to arrest a person charged with violating the terms of such order of protection ... and bring such person before the court and, otherwise, so far as lies within his power, to aid in securing the protection such order was intended to afford....

Thus, New York equates an order of protection with a showing of probable cause. *Sassower v. City of New Rochelle*, No. 77 Civ. 5728, slip op. (S.D.N.Y.1980) (Sand, J.) [available on WESTLAW, 1980 WL 4673] (available on LEXIS, Genfed Lib., Courts File).

■ Otero claims that he had lawful authority to occupy the apartment because it was his home, and he had the keys, keys which Ramirez, the custodian, did not have. This argument totally disregards the existence of the order of protection, which forbade Otero from being on the premises. The fact that he had the keys does not operate in his favor but against him. He had the only set of keys because he had the locks changed so that those in lawful occupation could not enter.

Otero next claims that there was no probable cause for the arrest because Ramirez, as a stranger to the order of protection, did not have authority to enforce that order. However, the provisions in the Family Court Act relied on by Otero concern the authority to initiate court proceedings and not authority to notify police. *See* New York Family Court Act §§ 822, 846.

The proceedings in this case, the charges filed against Otero, were initiated by Jennings himself. As a police officer, Jennings was a person authorized to initiate court proceedings under § 822(c). Section 168 itself does not specify who must present the order of protection to the officer. Indeed, if others, for example neighbors, were not permitted to report such violations, the police might fail to discover, prevent or diffuse domestic violence, for a spouse may not always be capable of getting to a phone while being abused.

Additionally, Otero claims that upon realizing that Gloria, the person the order was intended to protect, was not in, Jennings should have realized that there was no probable cause and declined to arrest Otero. However, the order on its face does not merely protect Gloria as an individual. It specifically states that Otero is denied access to the premises. Since such orders often protect property as well as individuals, *see Bruno v. Codd*, 47 N.Y.2d 582, 393 N.E.2d 976, 419 N.Y.S.2d 901, 903 (1979) (order of protection is "a form of injunction by which an offending spouse ... may be compelled, under threat of imprisonment for up to six months, to refrain from particular offensive conduct or to stay away from the other spouse *or the marital domicile*"[5]), the fact that Gloria was not at home did not negate the violation.

■ Next, Otero contends that there was no probable cause to arrest him because the validity of the order of protection was questionable. For this proposition he relies on *Iadeluca v. Iadeluca*, 28 A.D.2d 1141, 284 N.Y.S.2d 613 (2d Dep't 1967), which modified a protective order by substituting a specific time period for "until further order of the court." However, the Family Court Act has been amended since *Iadeluca* such that no order can be operative for longer than one year under § 846. Additionally, although the modification of the order of protection in this case stated that it was operative "until further notice of the court," the order itself had a specific termination date, namely October 17, 1985.

---

**5.** Note, under current law, an order of protection may be effective for a period of up to one

year as opposed to six months. *See* New York Family Court Act § 842.

Thus, although the modification could have become inoperative before the order expired, its duration could not have exceeded that period and therefore the order was for a specific period of time.

■ Moreover, even if the order's validity was questionable, the issue here is not whether a court was to enforce the order, but whether it, on its face, constituted probable cause to arrest Otero. This court holds that it did. The order appears valid on its face, signed by two Family Court judges with authority to issue protective orders. The purpose for issuing such orders is to protect people and their possessions from domestic violence by giving police immediate authority to remove the offending family member from the premises and take him into custody. Indeed, Otero does not assert that the order was obviously defective on its face, but merely that the "until further notice" phrase made validity a question of fact. An officer need not resolve such questions when making an enforcement decision.

Since there was probable cause to arrest Otero, his actions against Jennings for false arrest, false imprisonment, and malicious prosecution must fail.[6]

■ Next, the City moves for summary judgment dismissing those portions of the complaint which accuse it of institutionalized abuse through faulty training and supervision of officers and through toleration of unconstitutional conduct on the part of such officers.

Under *Monell v. New York City Department of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), a municipality cannot be held liable under 42 U.S.C. § 1983 under the doctrine of *respondeat superior* but only "when execution of a government's policy or custom ... inflicts the injury." *Id.* at 694, 98 S.Ct. at 2037. In *Oklahoma City v. Tuttle*, 471 U.S. 808, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985), the Supreme Court held that one incident of violence on the part of a police officer did not reflect a policy on the part of the city. In *Tuttle*, the Court discussed the requirements of proving such a policy:

[Inferring] a thoroughly nebulous "policy" of "inadequate training" on the part of the municipal corporation from [a] single incident .... provides a means for circumventing *Monell*'s limitations altogether. Proof of a single incident of unconstitutional activity is not sufficient to impose liability under *Monell*, unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy, which can be attributed to a municipal policymaker. Otherwise the existence of the unconstitutional policy, and its origin, must be separately proved. But where the policy relied upon is not itself unconstitutional, considerably more proof than the single incident will be necessary in every case to establish both the requisite fault on the part of the municipality, and the causal connection between the "policy" and the constitutional depravation.

*Id.* at 823–24, 105 S.Ct. at 2436–37. The Court stated that inadequate training is not unconstitutional in itself. *Id.* at 832 n. 7, 105 S.Ct. at 2441 n. 7.

Otero's complaint sets forth conclusory allegations of inadequate training and supervision on the part of the City, but does not provide any specific instances tending to prove such conduct other than that giving rise to this action. He has not provided the court with any more specific proof of inadequate training or supervision in opposition to this motion, except insofar as he asserts that Jennings was improperly trained because he did not know how to respond to a report of a violation of an order of protection. Absent this allegation, Otero has not approached the standard of proof required by *Tuttle* to sustain an allegation of a policy of inadequate training.

■ Additionally, *Tuttle*'s holding that one incident is not enough to establish a policy can be applied to Otero's allegations that the City tolerated unconstitutional con-

---

**6.** Since there is probable cause to support the arrest, it is not necessary to address Jennings' claim of immunity.

duct on the part of Jennings. Otero has alleged that past incidents indicate that Jennings has vicious propensities and that the city was aware of these due to previous incidents. However, the incidents consisted of several complaints to the Civilian Complaint Review Board ("CCRB") over the course of Jennings' career. None of these complaints were substantiated, and they were thus inadmissible against Jennings under Rule 404, Fed.R.Evid. Under these circumstances, Otero can only assert that Jennings acted improperly in one instance—that concerning his arrest. Therefore, the city cannot be held responsible.

*Conclusion*

For the reasons set forth above the defendants' motion for partial summary judgment is granted. The parties will submit an order on notice as well as a final pretrial order within thirty (30) days.

It is so ordered.